# IN THE OREGON TAX COURT

Jack Jr. and Dorothy HAYRE

*v.*

## DEPARTMENT OF REVENUE

(TC 2900)

Joseph J. Hanna, Jr., Hanna, Spencer, Kerns & Strader, Portland, represented plaintiffs.

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered December 14, 1990.

**CARL N. BYERS, Judge.**

Plaintiffs appeal from an income tax deficiency for 1982 arising from the sale of a partnership interest.[1] The parties stipulated the facts and submit the matter on briefs.[2]

---

[1] By Stipulation, filed April 20, 1990, plaintiff withdrew from consideration issues related to the receipt of a life estate. After defendant corrected its revised auditor's report by letter dated July 2, 1990, no issues remain for the year 1981.

[2] Although the opening briefs of the parties are denominated "Pre-Trial," no trial was held because the parties stipulated to the facts.

## FACTS

In 1966, plaintiff Jack Hayre ("plaintiff"), his son and three others formed a California general partnership for the production of chicken eggs. By 1982, various changes had taken place in the membership of the partnership. Plaintiff owned a 48 percent interest, his son owned a 26 percent interest, and a third person owned a 26 percent interest.

On December 31, 1982, plaintiff sold his interest in the partnership to the partnership. Thus, the partnership became obligated to pay the purchase price and perform the purchase agreement.

The consideration for the purchase of plaintiff's interest was a $20,000 promissory note and the assumption by the partnership of plaintiff's share of its liabilities. The assumption statement reads:

> "The Buyer agrees to assume the Seller's share of any obligation or liability arising from or in connection with the partnership business, and agree [sic] to hold the Seller free and harmless from any claim or demand whatsoever."

As of December 31, 1982, the partnership liabilities consisted of two loans, one from a bank and the other from a production credit association, totaling $4,198,258. Under separate continuing guarantee agreements, each of the partners personally guaranteed the debts. Plaintiff claims his share of the guaranteed amounts was $997,572. Although the partnership assumed those liabilities by its purchase agreement, plaintiff was not released by the creditors from his obligation under the guarantee.

## ISSUE[3]

Did plaintiff realize gain in 1982 from the partnership's assumption of the guaranteed liabilities?

## GENERAL LAW

Before entering the partnership taxation hall of mirrors, it is well to review briefly the basic rules. A partner's income, gain or loss, depends upon what gets put into or taken out of the partnership pot. Of course, the nature of what gets

---

[3] The parties were unable to agree on the phrasing of the issue. *See* plaintiff's letter to defendant's counsel of September 7, 1990.

put in or taken out can vary from pure gold to shadows and smoke. Liabilities are specifically treated by the Internal Revenue Code as money. Any increase in a partner's share of the liabilities of a partnership is considered a contribution of money by the partner to the partnership. IRC § 752(a). On the other hand, any decrease in the partner's share of the liabilities of the partnership is treated as a distribution of money to the partner by the partnership. IRC § 752(b).

> "In the case of a sale or exchange of an interest in a partnership, liabilities shall be treated in the same manner as liabilities in connection with the sale or exchange of property not associated with partnerships." IRC § 752(d).

■     Under this provision, gain or loss on the sale of a partnership interest is determined by the general rules pertaining to the gain on the sale of property. IRC § 1001.

*FINDINGS*

The issue before the court is narrow. Only the partnership liabilities that plaintiff guaranteed are in question. Plaintiff concedes that nonguaranteed partnership liabilities were discharged as to plaintiff by the partnership assumption.

> "The non-guaranteed' debts have been discharged; taxpayer no longer has *any* liability on those debts."

The ultimate question, then, is: What is the effect of the guarantee on the assumption of the liabilities? Plaintiff contends that the guarantee makes the assumption "moot" because there is no independent third person assuming the liabilities.

> "Before the sale, had the Bank come to him and demanded payment and had he made payment, he would have had rights against the partnership as the borrower. After the sale, the Bank could do exactly the same and the taxpayer still had the same rights against the same partnership. * * * *Nothing changed* as a result of the agreement."

The court does not agree. The regulations only require that "another person" assume the partnership liabilities. Treas Reg § 1.752-1(b) and Treas Reg § 1.1001-2 (1982). There is no requirement that an independent or third person assume the liability. Likewise, there is no requirement that the taxpayer be released from liability. The effect of an

assumption is not to release a party from liability but to relieve that party from the ultimate obligation.

Plaintiff's "before and after argument" is also true with regard to the nonguaranteed partnership liabilities (which plaintiff concedes were discharged by the assumption). Before the sale, plaintiff was liable, along with the partnership, to the partnership creditors. If plaintiff was required to pay a liability, he was entitled to recover from other members of the partnership. After the sale, plaintiff could still be compelled to pay a liability, but the ultimate liability rested with the other partners.

With regard to the guaranteed liabilities, after the sale the ultimate liability lay with the partnership, not plaintiff.

> "[A] partner will be regarded as personally liable within the meaning of section 752 (for basis purposes) * * * if he has the ultimate liability to repay the debt obligation of the partnership * * *." *Melvin v. Commissioner*, 88 TC 63, 75 (1987).

Thus, the test is: Who bears the ultimate responsibility for the obligation? It is not, as plaintiff contends, who has the primary responsibility, or even who is in the chain of liability.

> "Where the transferee is ultimately liable on the debt, it is irrelevant for purposes of section 752 that the partnership remains liable to creditors. *Smith v. Commissioner*, 84 TC 889, 908 (1985)." *LaRue v. Commissioner*, 90 TC 465, 481 (1988).

There is no question that before the sale plaintiff, as a 48 percent interest partner, would be ultimately responsible for 48 percent of the partnership liabilities. After the sale, plaintiff had no ultimate responsibility for those liabilities. That obligation had been assumed by the partnership.

The court's finding here is consistent with the symmetry of IRC § 752. The characteristics of what adds to basis should be the same as that which decreases basis. *Tufts v. Commissioner*, 70 TC 756 (1978), *rev'd* 651 F2d 1058 (5th Cir 1981), *rev'd* 461 US 300, 103 S Ct 1826, 75 L Ed 2d 863 (1983).

It is not clear in this case whether the debts owing to the bank and the production credit association were recourse or nonrecourse loans.[4] If they were nonrecourse loans, assumption of plaintiff's share of the liabilities, including guarantee liabilities, would decrease his share of partnership liabilities and reduce his basis in the partnership. On the other hand, if they were recourse loans it would seem that the guarantee should be ignored.

> "Initially, it would appear a meaningless act for a general partner to guarantee a recourse obligation as he already is liable on the debt and the guaranty offers no additional security which the lender does not already possess. Thus, in such settings, the guaranty should be disregarded for allocation purposes, and the liability allocated according to the general rules for recourse liabilities." 1 Willis, Pennell & Postlewaite, Partnership Taxation § 63.04 at 63-11 (McGraw-Hill 4th Ed 1990).

In summary, before the sale, plaintiff was ultimately responsible for 48 percent of the partnership liabilities. After plaintiff sold his interest in the partnership, plaintiff was not ultimately responsible for any of the partnership liabilities.

> "The liabilities from which a transferor is discharged as a result of the sale or disposition of a partnership interest include the transferor's share of the liabilities of the partnership." Treas Reg 1.1001-2(a)(4)(v) (1982).

The court finds that plaintiff realized taxable income by virtue of the partnership assuming plaintiff's share of the partnership liabilities.

The parties have stipulated:

> "The exact amount of partnership obligations and liabilities guaranteed by Mr. Jack Hayre, Jr., shall be determined by the parties, if necessary, following the rendering by the court of its opinion."

The parties shall submit their determination of the partnership obligation and liabilities guaranteed by Jack Hayre, Jr. to the court within 30 days from the date of this opinion.

Costs to neither party.

---

[4] A limited partner may increase his basis in the partnership by guaranteeing nonrecourse partnership loans. *Raphan v. United States,* 759 F2d 879 (Fed Cir 1985), and *Abramson v. Commissioner,* 86 TC 360 (1986).